IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIOVANNI HERNANDEZ, *et al*.<br><br>Defendants.<br>_____ / | No. CR 08-0730 WHA<br><br>**ORDER GRANTING DEFENDANT GIOVANNI HERNANDEZ'S MOTION TO SUPPRESS FRUITS OF UNLAWFUL SEARCH AND SEIZURE** |

**INTRODUCTION**

Defendant Giovanni Hernandez moves to suppress all evidence seized as a result of a his warrantless detention, search, and arrest on August 12, 2008, and all evidence seized from a warrant-authorized search of 970 Ingerson in San Francisco flowing from his arrest (Dkt. No. 2001).[1] After reviewing the parties' submissions, oral argument, and presentations at the evidentiary hearing, this order finds that the officers' warrantless pat frisk of defendant Hernandez on August 12, 2008, was unlawful and all fruit flowing from the pat frisk must be suppressed. Accordingly, defendant Hernandez's motion is **GRANTED** and the evidence will be excluded from his trial.

**STATEMENT**

During the daylight hours on August 12, 2008, SFPD Officers Sergio Lopez and Henry Espinoza were riding in an unmarked police vehicle when they recognized three individuals they

---

[1] Counsel for defendant Hernandez has asserted through sworn declaration that his client had a reasonable expectation of privacy in the items he possessed during the relevant incidents and in 970 Ingerson (Vermeulen Decl. ¶ 2). The government has not contested this assertion and the record does not contradict it.

1   believed to be MS-13 gang members standing on the sidewalk in front of Taqueria Cancun in San
2   Francisco (Dkt. No. 2000-1 at V001273; Tr. 23, 36–38).[2]  Defendant Giovanni Hernandez was
3   one of these individuals (Dkt. No. 2000-1 at V001273). The officers parked a few buildings away
4   from the three individuals to observe them (*ibid.*). The officers briefly observed the three
5   individuals. There are varying statements in the record as to how long this period of observation
6   lasted. According to Officer Lopez's incident report, the observation period was a "few minutes."
7   Officer Lopez testified in state court that it was "five to seven minutes" (Dkt. No. 2249 at 9).
8   Officer Lopez's declaration submitted in support of the government's opposition to the instant
9   motion stated it was fifteen minutes, a figure he repeated at the evidentiary hearing (Lopez Decl.
10  ¶ 5; Tr. 26).

11       Officer Lopez testified that he had seen signs posted at Taqueria Cancun pursuant to San
12  Francisco Municipal Police Code Section 25 ("MPC 25") on the day in question and that he
13  understood the sign to be written notice for individuals not to loiter in front of a building (Tr.
14  29–30, 52). MPC 25 provided:

> No person, without permission, expressed or implied, of the owner, lessee, or other person
> in charge of private property or business premises shall enter upon such private property
> or business premises after having been notified by the owner, lessee, or other person in
> charge thereof to keep off or to keep away therefrom . . . Such notification . . . may be oral
> or in the form of a written notice, posted in a conspicuous place, describing the specific
> area and hours in which persons are to keep off or to keep away.

M.P.C. § 25(b)–(c).

   Officer Lopez did not see defendant Hernandez do anything outside the taqueria besides
stand on the sidewalk (Dkt. No. 2249 at 19; Tr. 39). He did not see him intimidate, assault, stab,
"check," or challenge people on the street, nor did he see him flash any gang signs (Tr. 40).
Officer Lopez stated for the first time at the evidentiary hearing, however, that defendant
Hernandez and his two companions would "rotate" towards the doorway of Taqueria Cancun —
although they did not go quite into the door (Tr. 27). This was not mentioned in Officer Lopez's
incident report — which was written within an hour of the incident, while the incident was fresh
in his memory (Tr. 34). This was also not mentioned when Officer Lopez testified in state court

---

[2] The events occurred at approximately 5:28 p.m. The undersigned has taken judicial notice that sunset on August 12, 2008, was 8:06 p.m. (Tr. 37).

2

approximately six weeks after the incident, nor was it mentioned in his declaration submitted in support of the government's opposition (Tr. 34–36).

The officers then approached the individuals to admonish them for violating MPC 25 (Dkt. No. 2000-1 at V001273; Tr. 28). As the officers were in plainclothes, they identified themselves as police officers as they approached with their police stars out (Dkt. Nos. 2000-1 at V001273, 2249 at 19; Tr. 28). The individuals "didn't seem too surprised" when the officers approached because they "had so many contacts in the past, it was almost routine" (Tr. 28). The individuals did not try to run, did not break into a fighting stance, did not try to surround the officers, and did not "puff themselves up" (Tr. 46–47). Nor did they threaten Officer Lopez verbally or physically. Additionally, Officer Lopez stated that there was nothing about the way defendant Hernandez was acting on that occasion that indicated he was prone to violence, was a threat, or had a weapon (Tr. 41, 49). Moreover, Officer Lopez testified defendant Hernandez had not exhibited violence towards him any of his prior contacts — six or seven in total — with him.

Despite the routine, non-threatening nature of the encounter, Officer Lopez pat frisked the individuals because of "all the violent occurrences that had occurred in that year," because Sergeant Molina had been green-lighted, and the officers were outnumbered by one (Dkt. No. 2000-1 at V001273; Tr. 31–32). Officer Lopez was concerned because MS-13 *as a whole* was a violent gang and Officer Lopez did not want to be the "first officer to be injured by [MS-13]."

During the pat frisk, Officer Lopez discovered a kitchen knife in defendant Hernandez's left front pocket (Dkt. No. 2000-1 at V001273). Defendant Hernandez was then placed under arrest for carrying a concealed weapon. Defendant Hernandez was *not* arrested or cited for an MPC 25 violation. Upon arrival at Mission Police Station, SFPD Sergeants Dion McDonnell and Molina took over the investigation. Sergeant McDonnell seized a photo, camera, micro card adapter, and two cell phones from defendant Hernandez and kept the items "for his case file." Additionally, the contents of cell phones were reviewed at the station. Officer Lopez and Sergeant Molina have claimed that the search was conducted out of concern that calling information and text messages on the phones would be deleted by incoming calls and messages (Lopez Decl. ¶ 8; Molina Decl. ¶ 8). During a booking search, Officer Lopez also located and seized marijuana concealed in defendant Hernandez's wallet.

Defendant Hernandez was interviewed at the station by Sergeant Molina and Sergeant McDonnell (Dkt. No. 2000-1 at V001262). During the interview, he purportedly told the officers that he had the kitchen knife in his pocket for protection, as he was recently robbed by "unknown black males." He allegedly admitted he was a member of MS-13, that he joined the gang in San Francisco, that his moniker is "Candil," that he recently was tattooed with Mara Salvatrucha tattoos, and was jumped in. He also provided his home address as 970 Ingerson in San Francisco.

Two days after defendant Hernandez's detention and arrest, Superior Court Judge Mary Morgan issued a search warrant for defendant Hernandez's residence at 970 Ingerson. The search warrant application was supported by an affidavit submitted by Sergeant Molina. The affidavit recounted the seizure of the knife, the contents of the cell phones which were searched at Mission Police Station, and defendant Hernandez's alleged post-arrest statements to Sergeant Molina and Sergeant McDonnell (*id.* at V001267). As a result of the execution of the search warrant, "four pieces of indicia" and two hundred rounds of shotgun ammunition were seized.

## ANALYSIS

### 1. WARRANTLESS SEARCHES AND SEIZURES ON AUGUST 12, 2008

Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment but are permitted if the government can prove by a preponderance of the evidence that a warrant exception applied. *See, e.g., Payton v. New York*, 445 U.S. 573, 586 (1980); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).

#### A. Investigatory Stop for Alleged MPC 25 Violation

The parties do not dispute that defendant Hernandez was "seized" for purposes of the Fourth Amendment when the officers stopped him to investigate the alleged MPC 25 violation. The question is whether the officers had a reasonable suspicion that defendant Hernandez was engaged in criminal activity or was about to commit a crime when he was seized. *Terry v. Ohio*, 392 U.S. 1, 24 (1968); *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006).

Reasonable suspicion under the Fourth Amendment requires that the seizing officer be aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion of criminal activity. *United States v.*

4

1  *Montes-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*) (citations omitted). Here,
2  Officer Lopez testified that he believed defendant Hernandez and his companions were violating
3  MPC 25 because they were doing nothing but lingering outside the taqueria on the sidewalk. This
4  suggested Office Lopez made a mistake of law regarding what constituted an MPC violation.[3] If
5  defendant Hernandez made a mistake of law in believing MPC 25 was being violated, his stop of
6  defendant Hernandez violated the Fourth Amendment for lack of reasonable suspicion. *United*
7  *States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000). MPC 25 clearly does not cover public
8  sidewalks — it covers private premises.

9  At the evidentiary hearing, Officer Lopez stated that he saw each of the individuals
10 "rotate" into the "plane of the face of the store" (Tr. 26–27). This was for the evident purpose of
11 showing that the individuals were intruding upon the private premises and not simply limiting
12 their path to the public sidewalks. The problem with this testimony, however, is that Officer
13 Lopez never made mention of this observation in any of the three statements previously made on
14 the subject. Namely, he did not mention any sort of "rotation" or crossing into the "plane of the
15 face of the store" in his incident report, in his testimony during the state court proceedings, or in
16 his declaration submitted in support of the government's opposition. It seems doubtful that this
17 circumstance could have been forgotten or omitted and seems more probable that this
18 circumstance is mere wishful thinking to support a better argument in favor of the government
19 that MPC 25 was being violated. This order rejects this aspect of Officer Lopez's testimony as
20 not credible.

21 The evidence is evenly divided over whether there was an MPC 25 sign in the window
22 (Tr. 29–30, 52, 65, 81, 85). This is further complicated by the fact that the only MPC 25 sign
23 offered into evidence was a form sign that did not include the hours or specific location from

---

[3] *Virginia v. Moore*, 553 U.S. 164 (2008), is inapplicable. In that case, there was no dispute over whether the officers had probable cause to believe the defendant had violated the law in the first place. The officers had probable cause to believe the defendant had violated the law — the issue was whether a state law prohibiting *arrest* for that particular violation required suppression although the arrest was not *constitutionally* impermissible. *Id*. at 173–74. The decision established that suppression is not required when an arrest is *constitutionally* permissible, even if the arrest violates state law. Here, the question is whether there was reasonable suspicion for the officers to believe criminal activity was afoot in the first instance. Without reasonable suspicion that any crime had been committed or was about to be committed, the officers would have had no basis to detain defendant Hernandez.

5

which individuals were to keep away from the taqueria and indicated it was only to be enforced when the posting business was *closed* (Gov't Exh. 5). Nonetheless, it is unnecessary to resolve whether the sign was in the window and how (and if) it was filled out because other findings in this order are dispositive. Moreover, if Officer Lopez simply made a good faith mistake of fact in believing the sign was posted or regarding the contents of the sign, the brief detention would have been lawful. Reasonable suspicion may be found even where officers make a good faith mistake of *fact* in believing a crime was being committed. *See United States v. King*, 244 F.3d 736, 738–39 (9th Cir. 2001).

### B.     *Terry* Pat Frisk for Weapons

Considering the totality of the circumstances, there was no reasonable suspicion to believe defendant Hernandez was armed and dangerous such that a *Terry* frisk for weapons was warranted. A limited frisk for weapons is permissible when based on an officer's belief based on specific and articulable facts. Mere "inchoate and unparticularized suspicion or 'hunch'" that the suspect is armed and dangerous is not sufficient. *Terry*, 392 U.S. at 27. As the Supreme Court has articulated:

> . . . *Terry* did not adopt a bright-line rule authorizing frisks for weapons in all confrontational encounters. Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.

*Maryland v. Buie*, 494 U.S. 325, 335 n.2 (1990); *see also Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) (finding *Terry* frisk was not supported by a reasonable belief that defendant was armed and presently dangerous even though officers had a search warrant to search premises for narcotics). Additionally, the nature of the suspected crime, along with other information regarding the defendant's dangerousness is to be considered in determining whether the officers had a reasonable belief to believe a pat frisk is warranted. *United States v. Flatter*, 456 F.3d 1154, 1157–58 (9th Cir. 2006).

Here, Officer Lopez did not articulate any basis for concluding that *defendant Hernandez* was armed and dangerous. Officer Lopez specifically testified that defendant Hernandez did not do anything to threaten Officer Lopez or suggest he had a weapon. Indeed, Officer Lopez stated

6

the encounter was "routine" and in the past, defendant Hernandez had never exhibited any violence towards him. Moreover, Officer Lopez's testimony did not demonstrate that the officers objectively should have feared for their safety during the encounter. The encounter took place during daylight on a public sidewalk in front of an active business. None of the detained individuals resisted nor made any sudden movements to suggest they would seek to use a weapon.

Before Officer Lopez approached, defendant Hernandez and his companions were doing nothing more than standing — they were not intimidating, assaulting, or threatening individuals on the street. As Officer Lopez approached, defendant Hernandez and his companions did not try to run, did not break into a fighting stance, did not try to surround the officers, did not "puff themselves up," or threaten the officers in any way. Furthermore, both Officer Lopez and Officer Espinoza were substantially larger in weight and height than defendant Hernandez — indicating that defendant Hernandez's physical presence alone was not intimidating (Tr. 47). Indeed, Officer Lopez outweighed defendant Hernandez by 100 pounds.

The only bases that Officer Lopez provided for believing a frisk was necessary were general atmospherics unrelated to defendant Hernandez and his conduct during the incident. Specifically, Officer Lopez pointed to the fact that 2008 "was a pretty violent year" in the Mission District and detailed a number of murders and attacks of *civilians* that year — only one of which occurred in the vicinity where the taqueria was located. Officer Lopez admitted that he relied almost entirely on these atmospherics and defendant Hernandez's alleged gang membership to justify the frisk. Gang membership alone, however, does not provide sufficient reasonable suspicion to pat frisk. *See Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999) ("the tendency of gang members to carry weapons does not 'lead reasonably to any inference as to' whether a particular gang member was armed on a given occasion").

Finally, although Officer Lopez testified that he was told Sergeant Molina had been "green lighted" by MS-13, Sergeant Molina was not with the officers when they approached defendant Hernandez and Officer Lopez acknowledged that there was no indication that defendant Hernandez was involved in "green lighting" Sergeant Molina (Tr. 22, 43). Officer Lopez also knew that no MS-13 member had attempted to hurt Sergeant Molina despite this

7

purported threat (Tr. 23). Accordingly, the purported "green lighting" of Sergeant Molina was not an objectively reasonable basis for reasonable suspicion that *defendant Hernandez* was armed and dangerous. Moreover, Officer Lopez testified that in his entire career as a member of the SFPD he himself had never been threatened as a police officer (Tr. 20), much less green-lighted himself. Thus, there were no personal threats made against Officer Lopez that would have led him to believe his individual safety was particularly at risk in that instance.

### 2. UNLAWFUL FRUIT FROM PAT FRISK

Since the warrantless pat frisk of defendant Hernandez was unlawful, the fruit of the pat frisk, his arrest, and the resulting search of 970 Ingerson must be suppressed. The government has not contested that the post-arrest searches and statements at Mission Police Station and the search of 970 Ingerson flowed directly from the pat frisk. Even assuming, however, that the government challenged whether the subsequently seized evidence constituted unlawful fruit, the inquiry is whether the evidence was obtained by "exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). The relevant factors to be considered are: (1) the temporal proximity between the unlawful action and the officers' seizure of the evidence; (2) the existence of independent, intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. *United States v. Washington*, 387 F.3d 1060, 1073–75 (9th Cir. 2004). The government has the burden to demonstrate that the warrantless pat frisk did not taint the later searches and interview. *United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989).

The government has not asserted any argument that the subsequent searches and interview were not untainted. The current record does not indicate that there was a significant time lapse between the unlawful action and seizure of the evidence at issue or that there were independent, intervening circumstances. Additionally, the pat frisk was clearly purposeful conduct on the part of Officer Lopez. Accordingly, the evidence seized and searched at Mission Police Station subsequent to defendant Hernandez's arrest were clearly fruit of the unlawful frisk. Had no frisk occurred, no kitchen knife would have been found, and defendant Hernandez would not have been arrested and brought to the station. Defendant Hernandez was only arrested for carrying a

concealed weapon — no other offense.  Defendant Hernandez was *not* arrested or cited for an MPC 25 violation.  Similarly, the search warrant application for 970 Ingerson relied directly on the materials seized from defendant Hernandez during the pat frisk and his arrest.  The search warrant affidavit recounted the pat search and arrest and described the items seized from defendant Hernandez and the post-arrest statements obtained as a basis to search 970 Ingerson.  Without this information, the search warrant affidavit would have contained absolutely no facts specific to why 970 Ingerson should be searched.

### 3. NO APPLICABLE EXCEPTION TO EXCLUSIONARY RULE

The government has failed to demonstrate that an applicable exception to the exclusionary rule precludes suppression.

The *Leon* good faith exception does not apply where — as here — a warrant was secured on the basis of unlawfully seized evidence.  *United States v. Bishop*, 264 F.3d 919, 924 n.2 (9th Cir. 2001); *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989).  Similarly, *Herring* does not counsel against application of the exclusionary rule because *Herring* does not apply to objectively unreasonable mistakes of law.  *See United States v. Song Ja Cha*, 597 F.3d 995, 1005 (9th Cir. 2010).  Here, at best the officers made an objectively unreasonable mistake of law in believing that they may pat frisk an individual solely on his purported gang-membership.  Moreover, exclusion would result in appreciable deterrence of deliberate, reckless, or grossly negligent conduct.  *Herring v. United States*, 555 U.S. __, 129 S. Ct. 695, 700–02 (2009).  The officers made a clear, deliberate error in believing an individual's alleged gang membership and generalizations not regarding the events at hand could support a pat frisk.  Exclusion would result in deterrence of the same conduct from being repeated.

Finally, the inevitable-discovery exception does not apply to the electronic material searched at Mission Police Station.  Under the inevitable-discovery exception, if the government can prove by a preponderance of the evidence that the evidence would have been inevitably discovered, the exclusionary rule does not apply regardless of any overreaching by the police.  *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000) (citation omitted).  The government, however, has not demonstrated by a preponderance of the evidence that the materials would have

9

been inevitably been discovered. Although the government argues that it would have inevitably obtained a search warrant to further search the cell phones and camera, it has not indicated what probable cause it would have been able to articulate to obtain such a warrant.

**CONCLUSION**

Mr. Hernandez's motion to suppress all evidence seized as a result of the warrantless pat frisk on August 12, 2008, is **GRANTED** and the evidence will be excluded from his trial. This includes all evidence obtained at Mission Police Station subsequent to his arrest and evidence seized from 970 Ingerson during the warrant-authorized search on August 20, 2008.

**IT IS SO ORDERED.**

Dated: January 6, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE